Case 7:18-cv-00286   Document 16   Filed on 11/18/19 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
November 18, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| WESLEY RICHARD HELTON, | § | |
| | § | |
| Petitioner, | § | |
| | § | CIVIL ACTION NO. 7:18-CV-286 |
| VS. | § | |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION

Petitioner Wesley Richard Helton, a state prisoner proceeding pro se, initiated this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.) In 2011, Petitioner was convicted of theft and sentenced to twenty years confinement in the Institutional Division of the Texas Department of Criminal Justice (TDCJ). In seeking federal habeas relief, Petitioner does not challenge his conviction or sentence, but rather his claims address the decision by the Texas Board of Pardons and Paroles (Board) in 2018 to deny his release to discretionary mandatory supervision (DMS). Petitioner challenges the Board's decision on four grounds, including claims that the Board violated his constitutional rights to Equal Protection and Due Process.

Pending before the District Court is Respondent's Motion to Dismiss. (Docket No. 8.) Respondent argues that the petition should be dismissed because Petitioner's claims are all unexhausted. (*Id.* at 4-6.) In his reply brief, Petitioner argues that he should be excused from exhausting state remedies because to do so would be futile. (Docket No. 10, at 9.)

After carefully considering the pleadings in this case, the state court record, and the applicable law, the undersigned concludes that the § 2254 petition should be denied. Petitioner's

claims are unexhausted, as he raises them for the first time in his federal habeas petition. Petitioner has failed to show that the available state remedies would be ineffective to protect his rights or otherwise futile. Accordingly, for the reasons discussed further below, it is recommended that Respondent's motion to dismiss be granted and that this action be dismissed without prejudice.

## I. BACKGROUND

In 2009, Petitioner was charged with felony theft of property ($200,000 or more) in the 416th Judicial District Court of Collin County, Texas. Petitioner was convicted and sentenced to twenty years confinement in the TDCJ. Petitioner began serving his sentence on July 29, 2009, and his maximum discharge date is July 29, 2029.[1] (Docket No. 8-1, at 3.)

On May 15, 2018, the Texas Board of Pardons and Paroles (Board) informed Petitioner that it was reviewing his case for possible release on discretionary mandatory supervision (DMS). (*Id.* at 4.) Later, on July 12, 2018, the Board informed Petitioner that he had been denied release. (Docket No. 1, at 11.) The Board listed four reasons for its denial, including the following: 1) Petitioner's record indicates a "predisposition to commit criminal acts upon release"; 2) the details of the instant offense reflect that Petitioner's release "poses a continuing threat to public safety"; and 3) Petitioner's "release would endanger the public." (*Id.*)

On July 20, 2018, Petitioner filed the instant federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the Board's 2018 decision denying him release on DMS. (Docket No. 1.) Petitioner asserts four claims in his federal petition: 1) the Board's denial

---

[1] While in custody for the theft offense, Petitioner was charged in the 16th Judicial District Court of Denton County, Texas, with felony possession of child pornography. (Docket No. 8-1, at 3.) It is unclear whether this charge was based on conduct occurring before or after Petitioner was incarcerated on the felony theft charge. In any event, Petitioner was convicted on the child pornography charge and sentenced to seven years imprisonment. (*Id.*) He has finished serving his term of imprisonment on that sentence. (*Id.*)

2

is "in violation of equal protection and due process" because it was "arbitrary and capricious"; 2) the denial violates his due process rights because it amounted to a revocation of his accrued good time and work time credits; 3) the Board's decision is arbitrary because there is no evidence to support the finding that his release would endanger the public; and 4) the Board's decision amounts to an "abuse of unfettered discretion." (*Id.* at ¶ 20 (Grounds One through Four).)

Respondent has filed a motion to dismiss, asserting that all of Petitioner's claims should be dismissed because he failed to exhaust his state court remedies. (Docket No. 8.) Petitioner filed a reply in which he argues that he should be excused from the exhaustion requirement because exhausting state remedies in his case would be "patently futile."[2] (Docket No. 10, at 9.)

## II. ANALYSIS

Respondent contends that all of Petitioner's federal habeas claims should be dismissed because he has failed to exhaust his state remedies as required by 28 U.S.C. §§ 2254(b), (c). (Docket No. 8, at 4-6.) Respondent is correct.

Section 2254(b)(1)(A) provides that an application for writ of habeas corpus "shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State." Section 2254(c) further explains:

> An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(c).

---

[2] In addition, John William Wheat filed an "Amicus Curiae Brief" on Petitioner's behalf, which largely echoes the arguments and points that Petitioner discusses in his reply brief. (*See* Docket No. 11.) Mr. Wheat states that he practiced law for over 40 years, but he has fallen on "hard times" and is serving a "short sentence." (Docket No. 11-1 (cover letter).) In preparing this report, the undersigned reviewed and considered Mr. Wheat's brief. While the points made by Mr. Wheat are thoughtful and cogent, they address issues that are not properly before the Court, for the reasons discussed in this report.

3

As the Supreme Court has noted, this exhaustion requirement gives "the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). Under § 2254(b), a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief." *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995). Stated another way, "[j]ust as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).

Here, there can be no dispute that Petitioner failed to raise his claims at the state level. Petitioner asserts that his claims are properly raised for the first time in this federal habeas petition because there is "no state corrective process available" to address them. (Docket No. 1, ¶ 23.) According to Petitioner, "[p]ursuant to Texas Government Code § 508.149(d) there is no administrative or judicial review available for the [adverse] decision" and "any other process would be ineffective to protect [his] constitutional rights." (*Id.*)

Petitioner is right about one thing. There are exceptions to the exhaustion requirement. Specifically, it does not apply where "there is an absence of a state corrective process" and where that process would be "ineffective to protect the rights of the applicant." *See* 28 U.S.C. § 2254(b)(i), (ii).

However, Petitioner is mistaken in contending that he has no effective state remedy. His four claims allege that the Board violated his constitutional rights by denying him his release to

DMS.[3] (Docket No. 1, ¶ 20 ("equal protection and due process rights" (Ground One); "due process" (Ground Two); "unconstitutionally arbitrary" (Ground Three); "violates equal protection and due process" (Ground Four)).) Such claims may be raised in state habeas applications pursuant to Texas Code of Criminal Procedure Article 11.07. Contrary to Petitioner's argument, the Texas Court of Criminal Appeals has rejected the notion that Government Code § 508.149(d) prevents a state writ applicant from "mount[ing] a due process challenge to the procedures used by the parole board in considering whether to release [the] applicant to mandatory supervision." *Ex parte Geiken*, 28 S.W.3d 553, 557 (Tex. Crim. App. 2000). Texas federal courts have relied on *Ex parte Geiken* for the proposition that the "exhaustion requirement applies to prisoners challenging a denial of release to mandatory supervision." *Washington v. Dretke*, No. 06-cv-1814, 2006 WL 1663387, at *1 (S.D. Tex. June 12, 2006) (citing *Ex parte Geiken,* 28 S.W.3d at 556); *see also Bradshaw v. Stephens*, No. 3:13-CV-3200-M, 2013 WL 5738026, at *2 (N.D. Tex. Oct. 21, 2013) (relying on *Ex parte Geiken* in rejecting the petitioner's argument that Government Code § 508.149(d) prevented state habeas review of the Board's decision to deny release on mandatory supervision); *Rosa v. Thaler*, No. A-10-CA-124-SS, 2011 WL 318126, at *4 (W.D. Tex. Jan. 31, 2011) (same). As stated in *Bradshaw*, "if Petitioner wishes to raise constitutional claims challenging the denial of release to mandatory supervision—which he must do in order to obtain federal habeas relief—he must

---

[3] To the extent that Petitioner intended to claim that the Board erroneously applied state law in denying him release to DMS, such a claim would not be cognizable in a federal habeas action under § 2254. The Supreme Court has emphasized "that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). As the Fifth Circuit put it: "Needless to say, a 28 U.S.C. § 2254 applicant must claim violation of a federal constitutional right." *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle*, 502 U.S. at 67-68).

exhaust his state remedies." 2013 WL 5738026, at *2; *see also Garcia v. Tex. Bd. of Pardons and Paroles*, No. 08-cv-329, 2009 WL 1708077, at *2 (S.D. Tex. June 17, 2009) (holding that a petitioner must exhaust his state remedies when challenging the denial of release to DMS).

Petitioner also argues that he was not required to exhaust state remedies because to do so would have been futile. (Docket No. 10.) Petitioner states that he "has been previously denied release to mandatory supervision three separate times within one year of each other on the same or sim[i]larly spurious bases." (*Id*. at 4.) Petitioner believes that his good conduct while incarcerated, together with his non-violent criminal history, entitled him to release on DMS.[4]

---

[4] In challenging the Board's findings, Petitioner asserts that he was convicted of "non-violent" crimes, has "significant military history," does not use drugs or alcohol, and is a family man. (Docket No. 10, at 6-8.) He also emphasizes that he "has never had any disciplinary proceedings filed against him while incarcerated, has never lost any 'good time' days and has been and is currently a 'state approved Security Class III W Trustee' inmate for well over nine years." (*Id*. at 6.) Petitioner's conduct while incarcerated may have been exemplary, as he suggests. *But see supra* n.1. If so, he is to be commended. Such conduct is a credit to Petitioner, regardless of whether it results in his early release from prison. While Petitioner may have been a "model inmate," his attempt to downplay the seriousness of his criminal history is troubling. In addition to his felony theft conviction (involving more than $200,000), Petitioner was sentenced to seven years' imprisonment for felony possession of child pornography. *See supra* n.1. He dismissively refers to this conviction as mere "possession of 'contraband.'" (Docket No. 10, at 6.) But this benign view of the offense of possessing child pornography is not shared by the U.S. Supreme Court, the U.S. Congress, the Texas Court of Criminal Appeals, or the Texas Legislature. Possession of child pornography is not a victimless crime. *See Paroline v. United States*, 572 U.S. 434, 457 (2014) (holding that statutory restitution for possessing child pornography is necessary to "impress upon offenders that their conduct produces concrete and devastating harms for real, identifiable victims"); *see also Vineyard v. State*, 958 S.W.2d 834, 840 (Tex. Crim. App. 1998) (holding that an "'integral part of the offense of possession of child pornography' is the harm to each individual child"). Individual children are sexually exploited and abused in the creation of child pornography images. *See New York v. Ferber*, 458 U.S. 747, 759 (1982) (finding that "[t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children"). Laws that criminalize the possession of such images are intended to prevent physical and psychological harm to defenseless children by reducing the demand for those images. *See Osborne v. Ohio*, 495 U.S. 103, 109–10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand.") (quoting *New York v. Ferber*, 458 U.S. at 756-58). However, it is unnecessary in this § 2254 action to determine whether the Board's decision to deny Petitioner

6

(*Id*. at 5-9.) The Board's findings, he says, are supported by "no evidence." (*Id*. at 11.) In further support of his futility argument, Petitioner claims that the Board "routinely denies release to [other] qualified inmates." (*Id*. at 6.)

It is true that exhaustion of state remedies would not be required "where the attempt to exhaust such remedies would itself be a patently futile course of action." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (applying futility exception where the petitioner sought habeas relief under § 2241); *see also Johnson v. Williams*, No. MO:09-CV-00039-RAJ, 2011 WL 13205603, at *10 (W.D. Tex. Aug. 5, 2011) (applying the futility exception in the context of a § 2254 habeas claim); *Vallejo v. Quarterman*, No. 3:09-CV-1386-D, 2009 WL 2709357, at *2 (N.D. Tex. Aug. 26, 2009) (same). This exception to the exhaustion requirement applies only in "extraordinary circumstances," and the petitioner "bears the burden of demonstrating the futility" of pursuing state remedies. *Fuller*, 11 F.3d at 62.

Petitioner has fallen far short of meeting his burden to show that exhausting state remedies would be futile. He argues that the Board has repeatedly denied DMS release to him and other qualified inmates. But this merely tends to support his claim that the Board erred in denying him release to DMS. It does nothing to support the notion that seeking state habeas relief from the state courts would be futile. To the extent Petitioner intended to suggest that he would be unlikely prevail on his habeas claims in state court, this too would be an insufficient showing of futility. "[T]he futility exception does not allow petitioners to avoid presenting their

---

release to DMS was sufficiently supported or to otherwise address the merits of his constitutional claims. As discussed above, the state courts must be given the opportunity to consider "in the first instance" whether the Board violated his federal constitutional rights in denying his release to DMS. *See Coleman*, 501 U.S. at 731-32; 28 U.S.C. § 2254(b)(1)(A), (c).

7

claims to the highest state court simply because they believe they are unlikely to win."[5] *Carpenter v. Davis*, No. 6:19-CV-00013-H, 2019 WL 5068642, at *4 (N.D. Tex. Oct. 9, 2019) (dismissing § 2254 petition for failure to exhaust state remedies).

Because Petitioner failed to exhaust state court remedies before seeking federal habeas relief, and because he has failed to show that those remedies would be ineffective or that pursuing them would be futile, his § 2254 petition should be denied without prejudice.[6]

### III. CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Respondent's Motion to Dismiss (Docket No. 8) be GRANTED, that Petitioner's § 2254 habeas petition (Docket No. 1) be DENIED, and that this action be DISMISSED without prejudice for failure to exhaust state remedies. For the reasons discussed below, it is further recommended that Petitioner be denied a certificate of appealability.

---

[5] In contrast, the Fifth Circuit has recognized that the futility exception applies, for example, when "the highest state court has recently decided the same legal question adversely to the petitioner." *Fisher v. Texas*, 169 F.3d 295, 303 (5th Cir. 1999). In *Fisher*, the futility exception applied because the "Texas Court of Criminal Appeals, sitting en banc, recently rejected the merits of [the petitioner's] claim that religion-based peremptory strikes violate the Equal Protection Clause." *Id*. Here, Petitioner Helton points to no such state court ruling that definitively rejects his federal constitutional claims.

[6] One of Petitioner's claims is that the Board violated his due process rights by, in effect, revoking his "good time/work time credits" when it denied his release to DMS. (*See* Docket No. 1, ¶ 20 (Ground Two).) This claim is essentially a restatement of Petitioner's other claims alleging that the Board denied his release to DMS without the required due process (such as a "formal hearing"). (*Id*.) To the extent that this claim may also be construed as a time credit dispute, Petitioner was required to first challenge this revocation by filing a Time Dispute Resolution (TDR) form. *Stone v. Thaler*, 614 F.3d 136, 138 (5th Cir. 2010) ("Under [Texas Government Code § 501.0081], prisoners are required to seek administrative review of their time-credit disputes by filing a TDR before filing a state habeas application."); *see also Bolden v. Director*, TDCJ-CID, No. 08-cv-406, 2009 WL 1120010, at *1 (E.D. Tex. Apr. 27, 2009) ("inmates must seek relief through the time credit dispute resolution process prior to seeking state habeas corpus relief on time credit issues"). By his own admission, Petitioner failed to file a TDR. (Docket No. 1, ¶ 23; *see also* Docket No. 8-1, at 4.) Thus, any time-credit claim should also be denied as unexhausted.

## **CERTIFICATE OF APPEALABILITY**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, the recently-amended § 2254 Rules instruct that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, RULES GOVERNING SECTION 2254 PROCEEDINGS. Because the undersigned recommends the dismissal of Petitioner's § 2254 action, it is necessary to address whether Petitioner is entitled to a certificate of appealability (COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a COA as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); s*ee also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* standard to a COA determination in the context of a habeas corpus proceeding). An applicant may also satisfy this standard by showing that "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *see also Jones*, 287 F.3d at 329. As to claims that a district court rejects solely on procedural grounds, the prisoner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Petitioner's § 2254 claims should be dismissed on procedural grounds. For the reasons explained in this report, the undersigned believes that reasonable jurists would not find debatable the conclusion that Petitioner's attacks on the Board's adverse decision should be dismissed because he failed to exhaust his state court remedies. Accordingly, Petitioner is not entitled to a COA.

## **NOTICE TO THE PARTIES**

The Clerk shall send copies of this Report and Recommendation to Petitioner and counsel for Respondent, who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

DONE at McAllen, Texas on November 18, 2019.

_____
Peter E. Ormsby
United States Magistrate Judge